IN THE CIRCUIT COURT OF
AUTAUGA COUNTY, ALABAMA

|  |  |  |
|---|---|---|
| THE STATE OF ALABAMA and<br>THE ALABAMA SECURITIES COMMISSION, | )<br>)<br>) | |
| Plaintiffs,<br>v. | )<br>)<br>) | CIVIL ACTION NO.: Cv·09-125-F |
| | ) | |
| ALLEGRO LAW, LLC, ALLEGRO FINANCIAL<br>SERVICES, LLC and KEITH ANDERSON<br>NELMS, | )<br>)<br>)<br>) | |
| Defendants. | )<br>) | |

## VERIFIED COMPLAINT
## FOR INJUNCTIVE, DECLARATORY AND OTHER RELIEF

The Plaintiffs, the State of Alabama and the Alabama Securities Commission, by and through their attorneys, submit this Complaint against the Defendants named herein. All allegations in this Complaint are based upon information and belief, except those allegations which pertain to the Plaintiff and its counsel, which are based on personal knowledge. Plaintiffs' information and belief is based upon, *inter alia,* the investigation made by and through its staff and attorneys.

## I. INTRODUCTION

In recent years, an increasing number of businesses, entities and persons have begun, via the Internet, television and radio advertisements, and even on billboards and e-mail, to solicit the funds of Alabama residents by promising to improve these residents' finances by consolidating their bills, invoices, and accounts, or "debts." Such businesses offer to pay the monthly bills of

the residents, who are directed to pay the business an upfront fee and monthly fees for the debt consolidation and payment service.

A few of these debt payment service providers pay the monthly debts of their customers without offering any additional services. However, the vast majority of debt payment service providers also offer credit counseling, debt management, debt reduction and debt settlement services and purport to achieve an overall reduction of the customer's total amount of debt through a combination of such services. These businesses must be licensed by the Alabama Securities Commission before they may conduct business in Alabama.

With the increase in the number of consumers holding a large amount of debt in the midst of a nationwide economic downturn, the profitability of businesses providing payment consolidation services has grown exponentially. Consumers are submitting huge amounts of money to businesses who promise debt reduction relief in an effort to capitalize on the plight of overextended Americans. In recent years the business scene has witnessed the emergence of a new type of contender in the realm of debt consolidation providers: law firms setting up debt consolidation payment businesses and advertising to the public such services as being provided by members of the legal profession. Lawyers adopting this type of business model seek to convince consumers that they operate under higher standards, possess greater knowledge and skills and are more capable and successful at handling debt consolidation than other such non-attorney providers. This business model is known as the "Hess-Kennedy Plan," after the attorney in Florida who originated the scheme. The Florida courts have repudiated this Hess-Kennedy model of business and the attorney responsible for it has been disbarred in Florida. The Defendants in the instant case have opened an office within this Court's jurisdiction from which they continue to operate in the Hess-Kennedy model by advertising to customers throughout the

United States over the Internet at www.allegrolaw.net and sending out form letters to creditors *en masse*. (Exhibits 1-14, 19).

The Defendants promote a particularly risky form of debt service, known as debt settlement, in which consumers stop paying monthly minimum amounts to creditors, believing that the creditors will then write off their debt, lower it to a less-collectable standard, and be willing to take a greater reduction in the amount for the settlement thereof. This was done in the past by creditors when accounts had been delinquent for extended periods of time. By channeling customers into debt-settlement programs, the Defendants are attempting to gain this benefit by purposefully and artificially lowering creditors' assessments of the quality of the customer debt, thereby inducing creditors to accept less to settle accounts. The consequence of this lowered credit standing is a lower credit rating for the consumer, more fees for the service provider, less money to the creditor, and more overall problems for the consumer.

As another consequence of the current economic climate, many banks and other lenders are no longer negotiating with third party debtor representatives or agents. Of course creditors have never had a legal obligation to settle a debt or to negotiate with a debt payment service provider.

## II. PARTIES

A. Plaintiffs.

1.     Plaintiff Alabama Securities Commission, a state agency created by act of the Alabama legislature. Ala. Code § 8-6-50 (2002). The Alabama Securities Commission is primarily responsible for the enforcement of the laws governing securities but also licenses and regulates money transmitters and bill payors, including those bill payors who consolidate debts

and engage in what is commonly referred to as a debt reduction business. The Commission has jurisdiction over all debt payment businesses that accept money for the purpose of paying another person's obligations, including those advertised to the public as credit counseling, debt reduction, debt settlement, debt consolidation, debt management and debt elimination programs. Under Alabama law any person engaging in a business that receives money as agent for obligors for the purpose of paying such obligors' bills, invoices or accounts must obtain a license from the Commission prior to conducting business in Alabama, regardless of the manner in which the business describes or advertises itself and regardless of the business plan it uses. Ala. Code § 8-7-3 (2002). For the purposes of this case, these businesses are collectively referred to as "debt payment services." By statute, the Commission may approve for licensure only those businesses that evidence the financial capacity and capability of conducting business in a financially responsible, honest, fair, equitable, careful, and efficient manner which commands the confidence and trust of the community. The Commission sues to enforce its statutory authority to enforce compliance with the statutory standards pertaining to the licensure of businesses that provide debt payment services. The Commission also has an interest in assuring that fraudulently obtained monies are not retained and that statutory violators disgorge gains from their wrong doing. The Commission has a duty to protect the societal interests of the residents of the State of Alabama, as those interests are reflected by the State's sovereign lawmaking powers.

2.    The State of Alabama, by and through its Attorney General, is specifically authorized under the Deceptive Trade Practices Act to bring an action against any person who is engaging in, has engaged in or is about to engage in any act or practice declared to be unlawful under the Act. Ala. Code § 8-19-8 (2002). The Attorney General may bring an action against such person to restrain by temporary restraining order and temporary or permanent injunction

4

such acts or practices. Ala. Code § 8-19-8(a) (2002). The Deceptive Trade Practices Act does not apply to activity subject to the provisions of the Securities Act or the Sale of Checks Act. Ala. Code § 8-19-7(5) (2002). The Deceptive Trade Practices Act allegations in this Complaint are ancillary causes of action and are in addition to the Sale of Checks Act allegations.

B. Defendants.

3.     Defendant Allegro Law, LLC (hereinafter, "Allegro Law") is a limited liability company formed under the laws of the State of Alabama with a business address of 2005 Cobbs Ford Road, Suite 304, Prattville, Alabama.

4.     Defendant Allegro Financial Services, LLC is a Delaware corporation with a business address of 2005 Cobbs Ford Road, Suite 304, Prattville, Alabama. The corporation was registered in Alabama with the Secretary of State on December 23, 2008 and applied for licensure under the Sale of Checks Act with the Securities Commission in an attempt to continue operating Allegro Law, LLC under a different name.

5.     Defendant Keith Anderson Nelms (hereinafter, "Nelms") is a citizen of the State of Alabama, a licensed attorney and the registered agent and sole identified member of Allegro Law. As registered agent for Allegro Law, Mr. Nelms lists an address of 3144 Fitzgerald Road, Montgomery, Alabama 36106.

### III. STATEMENT OF FACTS PERTAINING TO THE LICENSURE REQUIREMENTS OF THE SALE OF CHECKS ACT

6.     On March 2, 2009, while conducting an investigation of an unlicensed debt payment business, the Commission received information that Defendant Nelms was listed on a website as a reference for Bradford Daley and Court Mediation Services, Inc. as a reference. At that time, the Commission contacted Defendant Nelms and he stated that Mr. Daley did not have

the authority to use his name as a reference and that he would have it removed from the website.[1]

7.     On March 30, 2009, the Commission mailed a letter to Mr. Nelms concerning his business.   (Exhibit 28).   Before mailing the letter, the Commission attempted to contact Defendant Nelms by telephone to advise him of the contents of the letter.   However, Mr. Nelms was not available, so the substance of the letter was discussed with his Office Manager, Dawn Cheugh.   Thereafter, Ms. Cheugh contacted the Commission, stating that Mr. Nelms requested a meeting with the Director of the Commission, Joseph P. Borg.   She assured the Commission that the Mr. Nelms intended to comply with the directions of the Commission and to abide by all rules and regulations.

8.     On April 2, 2009, the Defendant met with the Director Borg and members of the Commission staff in the Licensure Division.   At that time, Mr. Nelms advised the Commission staff that he was advised that attorneys could only be regulated by the Alabama State Bar Association.   The Commission staff explained that the Sale of Checks Act did not exempt attorneys from licensure requirements.   Mr. Nelms conceded that he would apply for licensure.

9.     Mr. Nelms agreed not to conduct operations in Alabama, for Alabama customers until the Defendants were licensed under the Sale of Checks Act.   He agreed to apply for licensure.

10.     The licensure staff of the Commission explained the licensure process to the Defendant and discussed the standards of the industry followed in the Commission's licensure review.

11.     On April 21, 2009, the Commission received information that Chase Bank USA,

---

[1] The Commission has a pending action in the Circuit Court of Russell County, Alabama styled <u>Alabama Securities Commission v. Bradford Daley, Court Mediation Services, Inc., Integrity Debt Relief Group</u>, CV-2009-060. The Court has issued a Temporary Restraining Order in the matter, which also involves an unlicensed debt service payment provider.

N.A., (hereinafter, "Chase") had filed suit against the Defendants in the United States District Court Eastern District of New York alleging that Defendant Allegro Law had, from April 2008 to August 2008, sent Chase 2,344 identical form letters on behalf of clients in all fifty states. Chase asserted in its complaint that these letters were false, unfounded disputes against Chase. The complaint further alleged that the form letters Chase received were identical to the form letters that were used by Hess-Kennedy. Defendant Nelms failed to advise the Commission staff of this lawsuit against him and Defendant Allegro Law. (Exhibit 32).

12.     On June 9, 2009, the Commission received an application for licensure from Allegro Financial, 2005 Cobbs Ford Road, Suite 304, Prattville, Alabama. The Defendant Nelms lists himself as the Officer and Director of Allegro Financial. (Exhibit 31).

13.     On page 3, paragraph 6 of the application for licensure, Defendant Nelms states that Allegro Financial Services, LLC is engaged in the business of receiving money as agent for obligors for the purpose of paying bills, invoices and accounts. (Exhibit 31). Nelms further states that Defendant Allegro Law is transferring all clients to Allegro Financial. In paragraph 7 of page 3, the Defendant Nelms states that he is a licensed Alabama attorney and his debt management and debt settlement models were set up by the Venable Law Firm located in Washington, D.C. and that he is being advised by Bradley, Arant, Rose & White located in Birmingham, Alabama.

14.     Despite the question in paragraph 2 at page 4 requesting information concerning whether the applicant was the subject of state regulatory action, Defendant Nelms failed to disclose the fact that he is currently the subject of three state regulatory actions in New York, North Carolina and Alabama. (Exhibit 31). On page 5 at paragraph 3, a question concerning bank accounts to be used to deposit the obligor's money and the transmittal of money to the

obligees is not completed. (Exhibit 31).

15.    On the Allegro Law website, www.allegrolaw.net, Defendant Nelms is listed as
the founding partner of Anderson Nelms & Associates, LLC (hereinafter, "Nelms & Associates")
of Montgomery and Prattville, Alabama. (Exhibit 15). The website sets forth that Defendant
Nelms specializes in litigation, representing consumers, victims of fraud, employees, injured
persons and small businesses. The site also sets forth that Nelms & Associates has prosecuted
cases for individuals for civil claims related to personal injury and fraud. The website states that
Defendant Nelms has focused on civil actions against big businesses under the Fair Debt
Collection Practices Act and Truth In Lending And Fair Credit Reporting Act. (Exhibits 15, 16).
Additionally, the website does not disclose that General Counsel of the Alabama Bar Association
has petitioned the Disciplinary Commission of the Bar Association for the interim suspension of
Mr. Nelms' license to practice law based upon Mr. Nelm's activities related to Allegro Law,
LLC.

16.    In the "Our Services" section of the website, Allegro Law contends that its goal is
to negotiate structured repayment plans for clients to pay off their debts in "anywhere from
twelve (12) to sixty (60) months depending upon their situation and the program they choose."
Allegro Law further states that "in our opinion the only organizations best qualified to provide
such services, and that are able to obtain the best results, are those run by attorneys who hold
themselves to the highest professional and ethical standards." (Exhibit 17). In the "Helpful
Links" section of the site, there is a link to the Fair Debt Collection Practices Act which provides
the consumer a statement of the law concerning debt collection calls. (Exhibit 18).

17.    The Commission issued an Intent to Deny letter to Defendants on June 24, 2009.
(Exhibit 34). In the letter, the Commission staff notified Defendants of the Commission's intent

to deny Defendant Allegro Financial's application for licensure in Alabama.

18.    The Defendants continue to operate this unlicensed business in Prattville, Alabama. In fact, on May 5, 2009, the State of Alabama Attorney General received an inquiry about Allegro Law, LLC, a sale of checks business, from a resident of South Carolina.

## IV. STATEMENT OF FACTS PERTAINING TO THE DECEPTIVE TRADE PRACTICES ACT ALLEGATIONS

19.    The Defendants are operating their debt management and debt settlement service from Prattville, Alabama following the Hess-Kennedy model. The debt payment service has been sold over the Internet under name "Allegro Law, LLC" and offers both "debt management" and "debt settlement" programs. The Hess-Kennedy scheme has been repudiated by regulators in Florida and the attorney responsible for the scheme has been disbarred. Millions of dollars of funds wrongfully collected are being returned to consumers by a receiver in Florida. (http://www.lbfmiami.com. Click active cases, receiverships, then Hess-Kennedy).

20.    Defendants promote their services from Prattville via the Internet by use of interactive websites. These commercial activities are conducted by means of active websites which are highly interactive, systematic and continuous so as to support a finding of general jurisdiction in the State of Alabama regardless of the state of residency of the customer. *See Helicopteros Nacionales de Columbia, S.A. v. Hall,* 466 U.S. 408, 414 n.9, 104 S. Ct. 1868, 1872 n.9, 80 L.Ed.2d 404 (1984); *CompuServe, Inc. v. Patterson,* 89 F.3d 1257 (6th Cir. 1996); *Ex parte Phase III Const., Inc.,* 723 So. 2d 1263, 1264-65 (Ala. 1998).

21.    The Defendants began operating Allegro Law LLC in April of 2008. Exhibit 3 attached hereto is a letter written on Allegro Law letterhead dated April 14, 2008 and signed by an agent of Hess-Kennedy and Campos Chartered Law Firm. (Exhibits 1, 2). That letter is a

form letter used in the Hess-Kennedy scheme. The same form letter was used by Defendants on May 7, 2008 (Exhibit 4) and on July 25, 2008. (Exhibit 6). A second form letter entitled "Notice and Demand" used by Hess-Kennedy has been used by Defendants as late as August 1, 2008. (Exhibit 9).

22.      Defendants have entered into contracts with over 15,000 consumers nationwide, including at least 175 Alabama citizens, and are believed to be in possession of millions of dollars in customer fees and customer funds set aside for payments to creditors. Chase claims that Allegro Law has sent Chase form letters on behalf of Chase account holders representing $39 million in debt owed to Chase.

23.      The Attorney General received the first complaint regarding Allegro Law from Mark and Susan Bowen on March 6, 2009 when they wrote requesting assistance with obtaining a refund from Allegro Law. The next complaint was received on May 8, 2009 from Joe Anderson of Durham, North Carolina, reporting that he signed up for the debt settlement program with Allegro Law and had paid the required fees but was not getting promised services.

24.      Following notification from Chase of the filing of their Federal lawsuit in New York against Allegro Law LLC, Keith Anderson Nelms and Americorp, the Attorney General joined with the Securities Commission to prosecute this case.

## V. SUMMARY OF ACTION

25.      This joint action is brought by the Attorney General and the Alabama Securities Commission pursuant to two separate code provisions, the Alabama Sale of Checks Act and the Alabama Deceptive Trade Practices Act. The Sale of Checks Act violations primarily involve Defendants' breach of their statutory duty to obtain a license pursuant to the Sale of Checks Act

prior to engaging in the debt payment services business from their office in Prattville, Alabama, resulting in economic injury to citizens nationwide. The Defendants have acted in violation of the Alabama Sale of Checks Act and the Alabama Deceptive Trade Practices Act, thereby making appropriate declaratory relief and permanent injunctive relief. The Deceptive Trade Practices Act violations, conversely, involve the false, misleading and deceptive nature of the Defendants' acts or practices in the conduct of trade or commerce in Alabama and in other states. Because of the continuing illegal activities of Defendants, there is a severe and pressing need for the injunctive relief sought in this case.

26.    The Plaintiffs request the Court appoint a Receiver in this matter, to be paid for by the Defendants. The Receiver should be appointed to wind up and liquidate or to manage the business and affairs of the Defendants. If a Receiver is not appointed by the Court, consumers will suffer irreparable harm as Defendants will have unfettered control over consumers' funds and consumers could suffer further loss. Thousands of consumers are currently making monthly payments to the Defendants and it is foreseeable that other consumers will sign up as new clients and provide even more money to Defendants if a Receiver is not appointed by this Court.

## VI. NON-REMOVABILITY

27.    No Diversity. There is no diversity of citizenship among the parties. It is well settled law that a state is not considered a citizen for purposes of diversity jurisdiction. *See e.g., Postal Tel. Cable Co. v. Alabama*, 155 U.S. 482, 487, 15 S.Ct. 192, 194, 39 L.Ed. 231 (1894). Consequently, a suit between a state and a citizen of another state is not a suit between citizens of different states and diversity jurisdiction does not exist. *Id.,* 155 U.S. at 487, 15 S.Ct. at 194.

28.    Non-Applicability of Certain Federal Legislation. Plaintiffs expressly disavow

any claims under any exclusivity or preemption provisions of any federal statutes.

29.     Artful Pleading Doctrine.   Every form and amount of relief the Plaintiffs need or seek is afforded to the Plaintiffs by the expressly-pleaded causes of action set forth in this Complaint.   Plaintiffs do not plead and disclaim any claim under any federal statute and do not directly or indirectly assert, or even "artfully plead," any claims under any federal statute.

30.     Bankruptcy Removal Inapplicable.   This case is not a case arising within or related to any bankruptcy case: no bankruptcy is or ever has been a party hereto; no relief is sought herein directly or indirectly against any bankrupt or bankruptcy estate; the Plaintiffs have not filed any proof of claim in, or otherwise submitted to the jurisdiction of, the bankruptcy cases and courts having jurisdiction over any Defendants' bankruptcy estates if any Defendant files bankruptcy during the pendency of these proceedings.   Plaintiffs have not agreed to submit any dispute herein to a bankruptcy court.   Furthermore, pursuant to 28 U.S.C. § 1452(a), civil actions such as this action, which are brought by a governmental unit to enforce such governmental unit's police or regulatory power are not removable to federal court as a result of a debtor's bankruptcy filing.   Neither is this case removable under 28 U.S.C. § 1441, because § 1441 states that "except as otherwise expressly provided by Act of Congress," any civil action over which federal district courts have original jurisdiction may be removed to federal district court.   28 U.S.C. § 1452(a) "otherwise expressly provides" that state police power actions related to a bankruptcy case are not removable.   Therefore, under the express exception of § 1441, this case is not removable due to bankruptcy. *See In re Pacific Gas & Elec. Co.*, 281 B.R. 1 (2002).

## COUNT ONE
### (Declaratory Judgment)

31.     The Plaintiffs adopt the factual allegations as necessary in paragraphs 1-30.

32.    An actual, subsisting and live controversy exists between the Plaintiffs and the Defendants.  The Plaintiffs are entitled to a declaratory judgment of this Court, construing the debt payment services provided by the Defendants and declaring the duties and obligations of the Defendants and the rights of the Alabama consumers and of the customers of Defendants nationwide, prayed for hereafter, pursuant to the provisions of the Declaratory Judgment Act.  Ala. Code §§ 6-6-220 through 6-6-232 (2005).

33.    The Plaintiffs are entitled to a declaratory judgment that Defendants have engaged in the offer and sale of debt payment services as set forth herein, that Defendants have engaged in acts or practices declared unlawful under the Deceptive Trade Practices Act and that Defendants have violated the provisions of Alabama law as set forth herein.  Plaintiffs are entitled to the equitable relief with respect to such illegal conduct as prayed for herein.

## COUNT TWO
### (Injunctive and Other Relief – Sale of Checks Act)

34.    The Plaintiffs adopt the factual allegations as necessary in paragraphs 1-30.

35.    The Commission brings Count Two pursuant to the authority conferred upon it under the Sale of Checks Act, to temporarily and permanently restrain and enjoin Defendants from further violations of the provisions of the Sale of Checks Act.  Ala. Code § 8-7-1 (2002).  Furthermore, the Commission seeks an accounting of funds obtained by Defendants from consumers nationwide and an accounting of consumers nationwide successfully solicited by Defendants.  The Commission seeks declaratory, injunctive and other relief from Defendants for violations of the Alabama Sale of Checks Act.

36.    Defendants have made general solicitations to consumers nationwide from their office in Prattville, Alabama and obtained customers at a time when Defendants were neither

licensed nor exempt from licensing as required by the Sale of Checks Act.

37.     By engaging in the conduct described above, Defendants have engaged in practices proscribed by the Sale of Checks Act, Code of Alabama, section 8-7-3 (1975), in that Defendants accepted funds from customers and dispensed funds to the creditors of those same customers without first being licensed to engage in such business as required by Alabama law. This business was conducted by Defendants within this State, in Prattville, Alabama.

38.     At the time Defendants engaged in such business or sales, the Defendants were neither licensed, nor exempt from licensing, as required by Code of Alabama. *Id.*

39.     The Commission is entitled to an injunction against continuation of such violations and such wrongful course of business by Defendants, and to an accounting by Defendants as to the number of their customers and the funds obtained by Defendants relating to those customers, all as more particularly prayed for in the Motion, which accompanies this Complaint and in the supporting Memorandum of Law.  The Commission also prays for an award of costs and reasonable attorney's fees incurred in this action and an accounting, restitution or other equitable relief as a result of the illegal conduct of the unlicensed Defendants. The Commission is further entitled to a permanent injunction against Defendants, their officers, directors, agents, servants, employees, successors and attorneys-in-fact; and any person who, directly or indirectly, through one or more intermediaries controls, is controlled by, or is under common control with Defendants and all those in active concert or participation with each such Defendant, enjoining continuing violations of the Sale of Checks Act by Defendants.

40.     The conduct by Defendants described above in this Complaint constitutes violations of the Alabama Sale of Checks Act in at least the following respects:

41.     In connection with the selling, issuing or otherwise dispensing checks or receiving

money as agent for obligors for the purpose of paying such obligors' bills, invoices or accounts in Alabama, Defendants directly or indirectly advertised for customers on the Internet at a time they were not licensed pursuant to the Sale of Checks Act;

42.     Defendants entered into agreements with customers whereby those customers paid over to the Defendants funds pursuant to the Defendants' debt payment services programs;

43.     Defendants received funds paid by customers for the purpose of making payments to the customers' creditors;

44.     Defendants charged customers a fee for the above described services in connection with their debt payment services programs;

45.     Defendants were never licensed pursuant to the Sale of Checks Act, nor were Defendants exempt from the licensing provisions of the Sale of Checks Act--Defendants are openly and flagrantly continuing their wrongdoing;

46.     Defendants have illegally profited from their customers for the sums received as compensation for services provided under Defendants' debt payment services programs during the period they were not licensed.


### COUNT THREE
### (Unjust Enrichment – Sale of Checks Act)

47.     The Plaintiffs adopt the factual allegations as necessary in paragraphs 1-30.

48.     As a consequence of their wrongful conduct in violation of the Sale of Checks Act, Defendants have received a benefit in the form of large fees from customers who have enrolled in Defendants' debt payment services.  The illegal and wrongful fees charged customers from the Prattville, Alabama office have resulted in the Defendants holding moneys which, in equity and good conscience, belong to citizens of the State of Alabama.  The Defendants are

under an obligation to refund the illegal and wrongful fees acquired from citizens nationwide as agents for obligors for the purpose of paying such obligors' bills, invoices or accounts at a time when, in total disregard for the laws of the State of Alabama, they were not properly licensed by the Commission pursuant to the Sale of Checks Act.

49.     Because of the illegal actions of the Defendants, the law implies a debt, founded in equity, as it were upon a contract to recover money, which ought, not in justice, be kept by Defendants.  The Commission prays for restitution of the fees wrongfully taken from citizens nationwide at a time when Defendants were not licensed, thus violating the Sale of Checks Act.

## COUNT FOUR
### (Deceptive Trade Practices Act)

50.     The Plaintiffs adopt the factual allegations as necessary in paragraphs 1-30.

51.     The Alabama Deceptive Trade Practices Act prohibits "[e]ngaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce." Ala. Code § 8-19-5(27) (2002).  Defendants claim to use "proven techniques and accomplished negotiating skills" and "effective strategies" to "help consumers resolve their debt challenges." (Exhibit 16).  However, the techniques and strategies used by Defendants are not only ineffective at reducing consumers' debt, but also negatively affects consumers' credit ratings. (Exhibit 41). Allegro's program is false, misleading, and deceptive because the program is ineffective at reducing consumers' debt in most cases. (Exhibit 42).  Furthermore, consumers do not understand how much they are charged in fees by Allegro and do not realize that no payments will be made to creditors by Allegro until after those fees are paid in full. (Exhibit 41). Upon realizing the program does not do what was promised, many Allegro customers ask for a refund. (Exhibit 42).  The Alabama Attorney General has received complaints from consumers

asking for assistance in obtaining refunds from Allegro Law, LLC.  (Exhibits 36A, 36B).

## COUNT FIVE
### (Deceptive Trade Practices Act)

52.    The Plaintiffs adopt the factual allegations as necessary in paragraphs 1-30.

53.    The Alabama Deceptive Trade Practices Act prohibits "[e]ngaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce." Ala. Code § 8-19-5(27) (2002).  Allegro customers do not understand that they will pay a $25 non-legal set up fee, a $59 monthly fee and a fee of 16% of their total debt enrolled in the program up front, before any payments are made to creditors by Allegro Law.  (Exhibit 41). It is unclear to Allegro customers how much they will pay in fees and they do not realize that all fees must be paid in full before any funds are sent to creditors by Allegro Law.

## COUNT SIX
### (Deceptive Trade Practices Act)

54.    The Plaintiffs adopt the factual allegations as necessary in paragraphs 1-30.

55.    The Alabama Deceptive Trade Practices Act prohibits "[e]ngaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce." Ala. Code § 8-19-5(27) (2002).  Defendants' use of the name Allegro Law, LLC is false, misleading, and deceptive.  Defendants have misled the public by representing to consumers in correspondence, client contracts and other materials as well as advertisements, including advertisements on the Internet that Defendants are providing customers with legal services.  Allegro's website states "in our opinion the only organizations best qualified to provide such services, and that are able to obtain the best results, are those run by attorneys who

hold themselves to the highest professional and ethical standards." (Exhibit 17). Allegro Law has clients in all fifty states, many of whom chose Allegro Law to provide debt settlement services because they thought they were hiring a law firm to work on their behalf. (Exhibit 41). However, because Defendant Nelms is not licensed to practice law outside of the State of Alabama, Nelms has deceived consumers in other states. Consumers in Alabama are deceived by the Allegro Law name as well, believing they are hiring a law firm to represent them against their creditors when, in reality, Nelms and Allegro Law, LLC are primarily acting as a middle man and a source of referrals for a third party, Americorp, which is not a law firm. In fact, "Americorp handled the majority of initial and subsequent client communications and the majority of all negotiations and settlements with the creditors of Allegro Law's clients." (Exhibit 44 p.3 ¶ 1). A recent call placed to the "Allegro Law LLC Specialists" listed in the Allegro Law welcome packet rings in Huntington, New York and is answered "Allegro law firm, customer service department." Allegro customers are deceived by this practice because the specialists answering the phone number provided by Allegro are not lawyers, but employees of Americorp.

## COUNT SEVEN
### (Deceptive Trade Practices Act)

56.     The Plaintiffs adopt the factual allegations as necessary in paragraphs 1-30.

57.     Defendants create confusion for consumers as to the certification of services in violation of section 8-19-5(2) of the Deceptive Trade Practices Act. Although Allegro Law uses a New York address, Defendant Nelms is not licensed to practice law in New York and Defendant Allegro is not registered to conduct business or operate as a limited liability company in New York. (Exhibit 32). Defendant Nelms has only ever been licensed to practice law in

Alabama and Allegro Law is only registered to do business in Alabama. Allegro Law's welcome packet shows a Huntington, New York Address and two New York phone numbers, thus representing to customers that Allegro Law is licensed to conduct business in New York and that Nelms is licensed to practice law there. (Exhibit 30 p.4).

## COUNT EIGHT
### (Deceptive Trade Practices Act)

58.     The Plaintiffs adopt the factual allegations as necessary in paragraphs 1-30.

59.     The Deceptive Trade Practices Act also prohibits "[u]sing deceptive representations or designations of geographic origin in connection with goods or services." Ala. Code § 8-19-5(4) (2002). Although Defendant Nelms has only ever been licensed to practice law in Alabama and Allegro Law LLC is an Alabama company not licensed in New York, Allegro Law deceptively uses a Wall Street address in New York and New York phone numbers for customer contact. (Exhibit 30 p.4). Using a New York Street Address and phone number leads Allegro clients to falsely believe that Allegro law is a New York-based firm possessing superior business contacts to a non-Wall Street based firm. (Exhibit 41). While Allegro Law is not a New York based law firm, Allegro law does outsource its debt settlement work directly to Americorp, which is a New York based debt settlement company.

## COUNT NINE
### (Deceptive Trade Practices Act – Injunctive and Other Relief)

60.     The Plaintiffs adopt the factual allegations as necessary in paragraphs 1-30.

61.     The State brings Count Nine pursuant to the Deceptive Trade Practices Act to temporarily restrain and preliminarily and permanently enjoin Defendants from further violations

of the Deceptive Trade Practices Act and to seek declaratory, injunctive, and other relief from Defendants for violations of the Deceptive Trade Practices Act.

62.    The Alabama Attorney General is authorized, whenever he has reason to believe that any person is engaging in, has engaged in or is about to engage in any unlawful trade practice, to bring an action in the name of the State against such person to restrain by temporary restraining order and temporary or permanent injunction such acts or practices. Ala. Code § 8-19-8(a) (2002). Based on the facts and allegations outlined above in Counts Four through Eight, the Attorney General requests a temporary restraining order, preliminary injunction and permanent injunction.

63.    The Attorney General is also authorized to request the Court to appoint a master or receiver or order sequestration of assets whenever it shall appear that the defendant threatens or is about to remove, conceal, or dispose of his property to the damage of persons to whom restoration would be made. Ala. Code § 8-19-8(b) (2002). If a receiver were not appointed in this case, millions of dollars in consumer assets may be transferred or dissipated, preventing consumers from being made whole.

### COUNT TEN
### (Deceptive Trade Practices Act – Penalties)

64.    The Plaintiffs adopt the factual allegations as necessary in paragraphs 1-30.

65.    Any person who is knowingly engaging in or has knowingly engaged in any act or practice declared unlawful by section 8-19-5 of the Code of Alabama shall forfeit and pay a civil penalty of not more than $2,000.00 per violation upon petition by the Attorney General to the Circuit Court. Ala. Code § 8-19-11 (2002). As detailed in the preceding paragraphs of this Complaint, Defendants have committed numerous unlawful trade practices in violation of section

8-19-5 of the Code and are therefore subject to the penalties enumerated in section 8-19-11.

66.     As a result of their above described actions, Defendants have engaged in unlawful trade practices and have targeted consumers in Alabama who are protected by the Alabama Deceptive Trade Practices Act, as well as consumers nationwide.

67.     Defendants participated in the unlawful trade practices and had knowledge of the false, misleading and deceptive nature of their conduct.

WHEREFORE, THE ABOVE PREMISES CONSIDERED, the Plaintiffs pray for relief as follows:

68.     Grant permanent injunctions against Defendants, their officers, agents, servants, employees, attorneys and those persons in active concert or participation with Defendants, prohibiting such persons from doing the following acts:

69.     Violating the provisions of the Alabama Sale of Checks Act and the Alabama Deceptive Trade Practices Act;

70.     Engaging in any business activity or operations offering, providing or otherwise dealing in or related to debt payment services, debt counseling, debt adjustment, debt settlement, debt consolidation or debt management services for consumers;

71.     Assess against Defendants civil penalties in the amount of $2,000.00 for each act or practice found to be in violation of the Deceptive Trade Practices Act, pursuant to section 8-19-11 of the Code;

72.     Order permanent injunctive relief against Defendants, their respective officers, directors, agents, servants, employees, successors and attorneys-in-fact, as may be; any person who, directly or indirectly, through one or more intermediaries controls, is controlled by, or is under common control with Defendants and all those in active concert or participation with the

Defendants, enjoining Defendants' from conducting business in violation of the Alabama Sale of Checks Act and the Deceptive Trade Practices Act.

73.    Order an accounting of the business activities and moneys collected by Defendants from its customers, past and present;

74.    Order the appointment of a Receiver in this matter to be paid for by Defendants;

75.    Award reasonable attorney's fees pursuant to the Deceptive Trade Practices Act;

76.    Grant temporary relief pursuant to 8-19-8 of the Code of Alabama;

77.    Grant such other relief as this Honorable Court deems just and proper.

Dated this 30th day of June, 2009.

Respectfully submitted,

JANE LECROY BRANNAN (BRA001)
Associate Counsel
The State of Alabama Securities Commission
770 Washington Avenue, Suite 570
Montgomery, AL  36130-4700
(334) 242-2984
(334) 353-4690 (Fax)
jane.brannan@asc.alabama.gov

NOEL S. BARNES (BAR 155)
Assistant Attorney General
Office of the Alabama Attorney General
Consumer Affairs Division
500 Dexter Avenue
Montgomery AL 36130
(334) 353-9196



W. RUSHING PAYNE, JR. (PAY 023)
Deputy Attorney General
Office of the Alabama Attorney General
Consumer Affairs Division
500 Dexter Avenue
Montgomery AL 36130
(334) 353-4591


DEFENDANTS MAY BE SERVED VIA CERTIFIED MAIL RETURN RECEIPT
REQUESTED AS FOLLOWS:


KEITH ANDERSON NELMS
2005 COBBS FORD RD STE 301A
PRATTVILLE, AL 36066-7743


ALLEGRO LAW, LLC
2005 COBBS FORD RD STE 301A
PRATTVILLE, AL 36066-7743


ALLEGRO FINANCIAL SERVICES, LLC
2005 COBBS FORD RD STE 301A
PRATTVILLE, AL 36066-7743

FILED
JUL 30 2009
WHIT MONCRIEF
CIRCUIT CLERK

23